George D. Karalis, M.D.
235 El Camino Del Mar
San Francisco, CA 94121-1114
(415) 668-6634
In Pro Se



FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

JAN 30 2015

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____DEPUTY

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UNITED STATES OF AMERICA
Plaintiff,

Case No. 2:13-cr-346 KJD-GWF

**REPLY (OF SEIZED-PROPERTY OWNER KARALIS) TO DEFENDANT'S OPPOSITION (Doc. #50) TO MOTION (Doc. #46) UNDER FRCrimP 41(g)**

vs.

KELLY D. CARN,
Defendants
_____/

**COMES NOW THE MOVANT AND INTERESTED PARTY,** George Demetrius Karalis, and files this Reply to Defendant's Opposition ("DO") (Document # 50) to Karalis's Motion for return of seized property (Doc. #46).

Karalis has standing to file a 41(g) Motion. The DO argues that his claims are unliquidated, that the specific firearms he seeks cannot *all* be identified by serial number, and that he should not seek monetary damages, refunds, UCC "cover" (substituted goods), or other remedies under 41(g) because he has an ongoing civil case (#2:12-cv-694).

1

Karalis seeks only those guns not required in evidence in Carn's criminal proceeings. "(D)efendant's Rule 41[g] motion should presumptively be granted if the government no longer needs the property for evidence." (Internal citations omitted). *U.S. v Kriesel* (CA 9, 2013) 720 F.3d 1137 at 1144.

The DO's argument is essentially a plea in abatement. It does not address the merits. There is nothing which precludes filing a 41(g) Motion while the same Plaintiff has another case pending.

Defendant's Opposition is essentially arguing that an abatement of the 41(g) proceeding is at issue. Yet, it was Carn who initiated the earlier Motion to recover seized property (Doc. #30), and to ask the Court to adjudicate the title to the .380 MAC gun (Doc. #30's Carn Affidavit at parag. E). Carn is estopped to argue that a 41(g) proceeding is appropriate for Carn, but that 41(g) is inappropriate for Karalis.

Carn's argument that Karalis should be denied 41(g) access because of Karalis's concurrent civil proceeding ignores the Equity concept of *mutuality of remedies*— essentially What's Good for the Goose is Good for the Gander. Carn has already filed a 41(g) motion, while he is involved in ongoing Clark County felony proceedings. He could have waited until all of his proceedings were finished before filing for 41(g), so he is estopped to deny dual access to Karalis.

## CONCISE REVIEW OF FACTS

Defendant Carn has admitted already that Karalis is the owner of a seized .380 cal. MAC firearm, and Carn's own Motion for return of seized property (Doc. #30 & parag. E *supra*) and affidavit therein states that his motion is intended to return possession of that gun to Karalis. This is a flat admission by Carn that Karalis is the titled owner of at least one gun in the seized ATF cache.

2

Karalis's Complaint in #2:12-cv-694 alleges that Carn sold him eight (8) guns. The factual contet of all of the sales is essentially identical. Karalis would come into Carn's gun shop. Carn would show Karalis a gun. If Karalis wanted it, he would so state. Karalis would take physical possession (delivery) of the gun, then take a picture of it. Karalis would then, by verbal agreement, tell Carn to store it until Karalis could register the sale with ATF and then take physical custody of the gun. Karalis maintains the sale was complete at each event under the UCC, and that Karalis's subsequent return of the gun to Carn constituted a bailment. The only exception is a mini-UZI Group Industries 9mm gun, which was to be delivered as soon as Carn received it in his shop.

Again, Karalis believes that Carn's earlier motion (Doc. #30) was a fraud upon the Court and upon Karalis. Carn sought to smokescreen the theft of seven (7) guns by focusing on the .380—the only gun he had not (yet) stolen. He probably believed that Karalis would not realize this plan. Carn would then liquidate all the guns seized—through his corrupt family business which still holds a Class 3 ATF license—and sell them to pocket the money. Probably he would then file bankruptcy. Plintiff Karalis would be left with two (2) destitute defendants and no recovery (beyond the .380, assuming Carn has not already sold that gun three times over).

**MOVANT KARALIS HAS MET ALL REQUIREMENTS FOR 41(g) JURISDICTION.**

In a 41(g) proceeding, the Court should consider the UCC title claim of Karalis. The Court has The All Writs Act power to fashion remedies. Karalis should be allowed to introduce evidence of fair market value (before and after the breach), and evidence of consequential damages. *See generally*, Dobbs, Remedies, Sects. 12.16 et seq., and cases cited therein.

The DO (page 4) cites *U.S. v. Comprehensive Drug Testing* (CA 9, 2010) 621 F.3d 1162, which in turns cites *Ramsden*, to set forth the requirements for 41(g): (1) movant must be plainly aggrieved; (2) movant will suffer irreparable injury if seized items are not

3

returned; and (3) the lack of adequate remedy at law. There is a fourth factor—whether the government showed callous disregard for the rights of third parties.

NOTE THAT Carn's pending 41(g) motion (Doc. #30) fails to meet the *Comprehensive* criteria. Carn simply needs quick money to pay his personal debts, and ignores the reality that he will be liquidating *Karalis's* guns (or guns) Karalis should be awarded as UCC "cover" [substituted goods]) or guns not yet determined to belong to him. *Put simply, Carn is "plainly aggrieved" that he will suffer "irreparable injury" by being precluded from stealing Karalis's goods. Carn views 41(g) as an ATM machine for a quick fix.*

The "irreparable injury" requirement has its critics, because it flies in the face of Equity. "The decisions that require the movant to demonstrate irreparable harm…have erected an unjustifiable barrier" where ther is no indictment. *Doane v U.S.*, No. 09-Mag. 0017 (HBP) 2009 U.S. Dist. LEXIS 61908 (SD,NY, 2009).

That fourth requirement is also met in Karalis's case. Karalis's property has been held in ATF vaults for about three (3) years without the government serving him with a forfeiture notice or even seeking information from him about what claims he might have to the guns. Moreover, each day in ATF custody could result in ATF's damaging the guns, and, if so, Karalis would have no remedy because Carn is nearly bankrupt and the ATF is still clothed with sovereign immunity from suit for money damages. See, e.g., *Ordonez v. U.S.* CA 9; 2012) 680 F.3d 1135.

At least one court avoided listing the callous disregard fourth factor. See *In re: Application of Madison* (ED,NY; 2009) 687 F. Suppl. 2d 109, which states the petitioner "must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended."

In *Ramsden v U.S.* (CA 9; 1993) 2 F. 3d 322, the court found "callous disregard" existed in a warrantless search. Karalis argues that, during the ATF seizure of Carn's gun store,

4

the ATF seized nearly every National Firearms Act (NFA) item. This limits Karalis's ability to recover the .380 MAC gun (which even Carn admits belongs to Karalis) and it limits Karalis's access to other seized guns to be awarded to Karalis as UCC "cover" (substituted goods). In short, the ATF warrant should have been limited to guns criminally involved. In the U.S. Response to Carn's 41(g) motion (Doc. # 33), the U.S. admits not all guns are of evidentiary value: "The government submits that many of the firearms listed by defendant in the Motion have evidentiary value and thus should not be returned (citing *Mills*)." The word "many" means less-than-all---and therefore the ATF seizure was overbroad. Karalis is a collateral victim of that overbreadth.

There is a strong argument that the "callous disregard" factor does not apply outside of a motion to suppress. One court *held* that the circumstances of a seizure are irrelevant for motions requesting a return of property (without a claim of suppression) and that "callous disregard" can be analyzed as whether the government has held the seized property for an unreasonable amount of time (nearly three [3] years in Karalis's case). *Mr. Lucky v U.S.* (CA 7, 1978) 587 F. 2d 15 at 17.

NOTE that *Mills* 991 F.2d at 612 is a Ninth Circuit case which militates that *evidentiary* guns can be returned when the government's need for the guns terminates—and Karalis should recover the .380 MAC gun *then*, at the *latest*.

*Ramsden v U.S.* (CA 9; 1993) 2 F. 3d 322, 324, found that "district courts have the power to entertain motions to return property seized by the government where there are no criminal proceedings pending against the movant." *Ramsden* also stated such Rule 41 motions "are treated as equitable proceedings." (For Karalis, this means that, even if this Court cannot award monetary relief or damages, it can order specific performance, replevin, or other remedies to make him whole).

The DO suggests (page 6) that 41(g) is an inappropriate forum, and that Karalis's federal civil action is instead the appropriate forum---"Karalis has already elected his best remedy" (Id., page 5/ L 24). One look at the #2:12-cv-694 document log shows 129

documents already filed, spanning almost three (3) years, with Karalis having faced a litany of obstructions. THIS is a "best remedy" ??

**THE (01-31-14) *GLADDING* DECISION SUPPORTS KARALIS'S RIGHT TO INSPECT ATF SEIZURES TO IDENTIFY HIS ITEMS.**

On 1-31-14, the Ninth Circuit published the (3-0) opinion in *U.S. v. Gladding* (CA 9 docket # 12-10544)

Gladding's computer was seized, and contained an admixture of contraband and non-contraband images. The contraband involved images of a minor engaged in sexual conduct. Movant Gladding sought a 41(g) return of personal, non-contraband files. The DO argues that Karalis "admits in his motion that he can only identify one or two of the firearms...." (Id., p. 3/L 6). At p. 5, the DO argues that Karalis cannot be sure what, if any, of his missing guns he will find upon his personal inspection at the ATF vault.

At this juncture, it should be recalled that Karalis does not have the serial numbers of every one of the eight (8) guns he bought, but he *does have* the serial numbers of some (bcause they appear on the Gun Vault's Bills of Sale (attachd as exhibits to his Complaint, Doc. #1, in 2:12-cv-694). Karalis also has photos of each gun except one— the Group Industries UZI, which was supposed to be "on order" and therefore not available for photographing. The photos are exhibits in Karalis's declaration in the instant Motion.

NOTE THAT Carn attempted to get control of the entire cache of guns, and his affidavit misleads the Court into believing Karalis only has one (1) gun in the ATF vault. Maybe so—but the reason would be that he stole the other seven (7).

Looking at some of the guns he paid for, we see, just for one example, a GERMAN MP40 9mm SMG listed on Exh. D of the Complaint (in 2:12-cv-694). Exh. D is a second-page to a Gun Vault, Inc. Bill of Sale. The SMG on the second page has no serial number. Now, looking at Items #4 and #5 on the Search Inventory (Exh. E to Carn's

41[g] motion herein [Doc. # 30 herein], we see two seized "GERMAN MACHINE GUN, model MP40 s/n H9(or 4) 3093 AND S/N LRS 3686U(or N)—the handwriting could be improved. **Could one of these be the GERMAN MP40 that Karalis bought and photographed??** (The photo is Exh. 10 of Karalis's instant 41(g) Motion.

In short, it is critical that Karalis be allowed to access the ATF vault with photos in hand.

Looking at the ATF seizure inventory appended to Carn's 41(g) motion (Doc. #30 herein), we see a make and model gun of the same description with a serial number. Could this be one of Karalis's missing guns ? Quite possibly. Karalis should have 41(g) access to the ATF vault to compare his photos to the scratches, dents, tool marks, etc. (which make a gun as identifiable as a fingerprint) to see if the ATF seized gun is one he photographed when he purchased it. *FREvid.* 901(b)(4) permits tool marks and the like to serve as a basis for identification.

*Gladding* outlines a number of remedies the Court may employ to assist Gladding's identification and return of the records sought. The Court noted that the government had argued (Slip Op. at Topic II-B) that it was "almost impossible to separate (the noncontraband) files out." That argument was rejected. (If a Court has that much power to examine the seized evidence, it has the power in Karalis's case to afford him an opportunity to eyeball the seized guns in ATF's vault).

The DO argues that 41(g) should not involve the hardship of having to identify what are and are not Karalis's guns within the ATF vault. The implication is that the 41(g) court cannot tackle such a complicated segregation of commingled items, but a federal civil court can handle it. This ignores the fact that the same judges ( Foley and Gordon) are assigned to both Karalis's civil and Carn's criminal case, and probably in the same courtroom.

*Gladding* (Slip Op. at Topic II-B) requires that an evidentiary hearing is required to settle the claim by any party that segregating the commingled items is too expensive or

onerous. The mere fact there is some commingling will not suffice to defeat a 41(g) claim. The same principle that applies to the computer data in *Gladding* applies to the guns in *U.S. v Carn*. "If the parties dispute the cost of segregating data, they should submit supporting evidence and the district court may hold an evidentiary hearing to resolve that dispute.... The district court is in the best position to fashion a remedy...."

The fact that Karalis's 41(g) motion involves at least one gun (the .380 MAC gun), with *undisputed* title in Karalis, is itself enough to warrant a 41(g) hearing as to that .380 gun. And so, a hearing is *ipso facto* warranted. Carn admits Karalis owns that gun. Carn Motion (Doc. # 30 at pg. 5 [Carn Affidavit, parag. E]).

**"EQUITY DELIGHTS TO DO JUSTICE AND NOT BY HALVES".**

The next question is, assuming *arguendo* that Karalis has standing to recover one gun, does he have standing to expand the motion to seek recovery of the other seven (7) claimed guns, or "cover" or monies derivative therefrom ? The answer is a resounding YES.

It is the purpose of Equity to find a complete answer and issue a judgment that will protect everyone from perpetual litigation on the issue. This Maxim buttresses Karalis's position that the the .380 MAC gun's title should be consolidated with the litigation involving the other (7) guns.

In short, all of these purchases can be distilled into a set of common interactions (showing the gun, photos, etc.). Thus, where, as here, the transactions are almost carbon-copies of one another, the eight (8) incidents can be litigated in the same trial. Moreover, the interests of judicial economy and consistency in results militates for a single 41(g) trial. The buyer and sellers are the same, the context is similar, and Carn's *modus operandi* is (probably) the same.

Otherwise, the Court would have to hear a full evidentiary trial on just the .380, and then again for the other seven (7) guns (individually or as a second batch) at issue.

*Judicial economy* would be served by trying all eight (8) incidents together. Karalis believes he will prevail. If so, he would use Collateral Estoppel as a Sword in his concurrent civil action. Whatever issues decided at the 41(g) hearing would not be relitigated again in the civil action, simplifying everything. If punitive, consequential, or other damages were not adjudicated in the 41(g) findings, Karalis would use collateral estoppel to bar relitigation of the *title* issue, and would only have to proceed in the civil action on the *damages* issue (punitives, etc.).

**"EQUITY ABHORS A FORFEITURE." THE "CALLOUS DISREGARD" REQUIREMENT IS PROBLEMATIC. TO THE EXTENT IT EXISTS, KARALIS HAS MET THE REQUIREMENT.**

Avoidance of forfeiture is why 41(g) was drafted in the first place.

The callous disregard factor is unnecessary in determining jurisdiction under 41(g). "EQUITY REGARDS SUBSTANCE RATHER THAN FORM." Equity will not withhold Justice due to a technicality.

In addressing the factors required for 41(g) jurisdiction, the Tenth Circuit held in *Floyd v U.S.* (CA 10, 1988) 860 F. 2d 999 at 1003, that, "It would be anomalous to impose as a jurisdictional hurdle a requirement more restrictive than the substantive harm specifically sought to be remedied by Rule 41(g)."

In Karalis's case, such callous disregard does exist. The federal government never served seizure document copies on Karalis or explained any rights to him for recovering seized property—and the seizure was about three (3) years ago. It will also be shown <u>infra</u> that *Fuentes v Shevin* entitled him to a timely hearing on the seizure, which the government never informed him of.

The Opposition cites *Ramsden* regarding the factor of "whether the government showed a callous disregard for the rights of third parties". Until now, nobody from the federal government has contacted Karalis about his claim to any of the seized guns. Karalis argues the federal government has disregarded his rights, especially considering it has been over three (3) years since ATF seized the entire cache. Carn must have agreed, because he sought 41(g) relief just as Karalis is.

**CARN SHOULD NOT BE REWARDED FOR HIS THEFTS BY BEING EMPOWERED TO *UNILATERALLY* OUST A 41(g) COURT OF JURISDICTION.**

A thief should not be granted the power to force a claimant into a regular U.S. District Court forum or to oust the Court's of power to hear a 41(g) claim just by stealing the item involved.

Karalis bought the eight (8) guns and immediately obtained good UCC title to them, but.Carn stole them. If Carn's theft of purchased item can oust this Court of jurisdiction under 41(g) to restore it to its owner, the result is that Carn's act of theft immunizes him from having to return the goods. He is unjustly enriched. The legal result is unconscionable. That result is that the transfer of title to Karalis , vested in Karalis under UCC at the moment of sale, is annulled by Carn's subsequent theft of the item.

Denying Karalis a forum under 41(g) to recover the money damages or "cover" (substituted goods) would mean that Karalis is penalized just because of Carn's theft. The DO argues Karalis still has the civil federal forum, but Karalis should not be punished by losing the 41(g) forum. After all, Karalis has access to *both* the civil forum *and* a 41(g) forum to litigate the .380 MAC gun-- which has not (yet) been stolen by Carn—and it would be inequitable and frankly bizarre to deny him access to a 41(g) forum to litigate the other seven (7), especially since the same parties and similar transactions are involved. Again, the judicial economy of having a single trial must be considered.

To hold otherwise would deal a blow to the Rule's intent. Not every litigant is like Karalis—fortunate to litigate in a U.S. District Court. Many are poor—the faces of Working America, the Little Guy. Their only redress would be a more cost-effective streamlined 41(g) hearing. Under the DO's urging, if an item is missing in a seizure due to the wrongdoer's earlier theft, that victim has no recourse except to a costly, lengthy U.S. District Court suit. If that unfortunate limitation were the intent of Congress and the drafters of the federal rules, why do Courts still have broad equitable powers under 41(g), including power under 41(g)'s terms to control the terms of the release of the goods and even order the goods be produced after release ?

**THE DO IMPLIES THAT A 41(g) PROCEEDING IS A MIIROR-IMAGE OF KARALIS'S CIVIL FEDERAL ACTION, AND THEREFORE KARALIS SHOULD BE RELEGATED TO THE CIVIL PROCEEDING AND OUSTED FROM THE 41(g) FORUM.**

The *result* of the two proceedings may be identical—that the eight (8) guns or "cover" or monies be restored to Karalis to render him Whole. However, Karalis should be granted access to both because they are otherwise *very different*.

In a 41(g) forum, the government is a party, which is not true in #2:12-cv-694. In the 41(g) forum, there are two (2) claimants. Carn has already filed a Motion for return of seized property. Now Karalis is filing. The government has also submitted memoranda. And so, the 41(g) forum involves three (3) *competing* parties—or at least two (2), which are Karalis and Carn locked in judicial combat for the same cache of guns.

In a 41(g) forum, the criminal defendant's position is fluid. The Court must regard whether the 41(g) proceeding is occurring pre-conviction, post-conviction, pre-indictment, etc. The status of the criminal defendant determines the degree of scrutiny the Court makes in determining 41(g) relief. This is discussed, for example, at the end of the opinion in *U.S. v. Unimex* (CA 9, 1993) 991 F. 2d 546, where a criminal defendant's right to 41(g) relief involves a balancing of Fifth and Sixth Amendments. In short, Carn has

criminal-related issues which a non-party like Karalis does not have. The only way to simplify the instant 41(g) proceeding would be separate 41(g) proceedings for Karalis and Carn, but then the problem becomes one of possible inconsistent results, loss of judicial economy, and the impracticality of dividing similar evidence and testimony over two (2) trials.

Another example of the difference between the two (2) fora is the U.S. Attorney's correct argument (Doc. # 33 herein) that Carn cannot receive any firearms as a condition of bail, and that releasing the guns to his sons (in a third-party trust) who operate Gun Vault, Inc., would constitute constructive possession. This is a 41(g) issue which is inapplicable to Karalis's civil federal suit, since Karalis is not barred by law from firearms possession, and the factors of pre- versus post-indictment status, etc., and bail provisions prohibiting Carn's actual or constructive transfer or receipt of firearms are not at issue in #2:12-cv-694. In fact, Carn's fluidity—he can be pre-indictment one day and post-indictment the next—alters the way the courts analyze his entitlements (or loss thereof)—more factors not at issue in #2:12-cv-694 relative to whether Karalis can take possession of guns awarded to him.

This begs the question: why would Karalis seek 41(g) relief when he has a viable civil federal action pending ? The answer is that Karalis seeks a quicker and easier path to Justice, but (defendants should heed) Karalis would continue the civil proceeding as long as it takes.

Karalis's position is stable. He is not a criminal defendant, and he is entitled to the greatest deference. The DO is incorrect in assuming that Karalis is seeking duplicative proceedings.

**THE 41(g) PROCESS IS AN EQUITABLE PROCEEDING, AND THEREFORE THIS COURT HAS JURISDICTION UNDER "THE ALL WRITS ACT" TO DO EQUITY.**

A 41(g) proceeding requested by the Motion of Karalis, who is not a party of defendant herein or in his civil federal case, is clothed with Equitable Jurisdiction. In *Mora v. U.S.* (CA 2, 1992) 955 F. 2d 156, 158, said, where "no criminal proceedings against the movant are pending or have transpired, a motion for the return of property is treated as a civil equitable proceeding" even if styled as being pursuant to Fed. R. Crim. P. 41(g).

In *U.S. v. Unimex* ( CA 9, 1993) 991 F. 2d 546, the Court addressed the appropriateness of a 41(e), (predecessor of 41[g]), action during the pendency of another action. "We cannot accept the proposition that the district court lacked jurisdiction over the res because of the civil forfeiture action pending in the same district (Citation omitted). By the terms of Rule 41(e), Unimex could move for return of its property, as "a person aggrieved" by the seizure of its property, in [the district court for the district in which the property was seized.] The district court consisted of all the judges of the United States District court for the central District of California (Citation), so Unimex's motion could not properly be rejected as being in the wrong court."

This Court has the authority to do Equitable Cleanup of all of Karalis's claims, in both the civil and 41(g) fora, and this is consistent with principles of Judicial Economy. The federal judicial district and the judges are the same, so there is no prejudice or *forum non conveniens* deriment to Carn.

The instant 41(g) Motion is filed in the same Nevada federal district as Karalis's civil action (#2:12-cv-694), and furthermore, the *same* judges (J. Foley and Gordon) are assigned to both of Karalis's actions. We are all in the correct fora.

The DO's argument is basically that Karalis cannot have two (2) simultaneous for a (his federal civil case concurrent with a 41[g]) proceeding. The DO is in effect arguing that Karalis must elect between remedies. The inescapable thrust of the DO argument is that the two (2) for a are mirror-image proceedings, so Karalis is entitled to only one.

Since Karalis has the burden of proof in both his federal civil case and 41(g), and considering he is not a criminal defendant, it is proper that he be afforded two (2) opportunities to recover his goods.

The DO argues that Karalis is limited in relief sought to recovery of only those guns he bought which are still within the seized ATF cache. In effect, the DO implies that the Court loses 41(g) jurisdiction to remedy Karalis's claim when the Thief has accomplished a pre-seizure theft.

Can Karalis recover money damages if Carn stole guns and they do not surface in the ATF's seizure cache ? A fair reading of the cases involving 41(g) is that 41(g) is a reasonable, result-oriented Rule designed to effect ultimate Equity, especially if the claimant was never a criminal defendant.

If Karalis alleged that the ATF had damaged or lost any guns, Karalis would have no remedy under 41(g), because the government never waived sovereign immunity under 41(g). *Ordonez v U.S.* (CA 9, 2012) 680 F. 3d 1135. However, the tortfeasor herein is Carn, not the government, and so money damages or UCC "cover" remedies are available to Karalis.

Even if we assume, *arguendo*, that 41(g) does not afford a Court the flexibility to grant money damages to Karalis, the Court still has equitable powers. Thus, the Court can grant an equitable remedy that would satisfy Karalis. Under UCC, Karalis is entitled to "cover" (substituted goods) or a money refund, whenever a merchant fails to deliver the goods. If the Court will not award damages, it can still order an equitable remedy like Specific Performance. Under this remedy, Carn would be ordered to transfer title to Karalis of several guns in the cache which Karalis never bought, but their transfer would be adequate "cover" to satisfy Karalis's right under the UCC. (There are a number of guns listed on the ATF seizure inventory your Movant would love to have in his collection).

**"EQUITY WILL NOT SUFFER A WRONG TO BE WITHOUT A REMEDY."**

**Justice is a concept, not a venue. It is a notion lodged in the Human Mind since the Beginning of Time**--and is never limited to a docket number, a specific courtroom, or *de minimis* technicalities. Justice is the motivation for sensitive persons to enter the legal profession. And a profession that has hosted brilliant minds like Wigmore and Chief Justice Marshall (1801-1835).

Said Chief Justice Burger --quoting from Sir Thomas More's "A Man For All Seasons"--- in writing for the majority in the snail-darter case. The U.S. Supreme Court halted the huge Tellico Dam project because of the endangered tiny fish:

> "The Law, Roper, The Law, I know what's Legal....And I'll stick by what's Legal. I'm not God....Yes, I'd give the Devil the benefit of Law, for my own safety's sake."   *TVA v. Hill* (1978) 437 U.S. 153.

RECALL THAT Karalis was just a buyer who came across defendant's store and bought guns over a period years. He is a BFP under UCC. The UCC was created to define the relationship between a buyer and a seller, and the UCC was enacted in NV to prevent the type of perpetual litigation, and hardship to an innocent buyer, which has resulted herein by Carn's hardcore position that he will not return monies or goods that he has stolen. His attitude is like Al Capone's: "Nuthin' I'm doin's illegal until you convict me."

Carn is acting as if a UCC *sale* is a joint venture Gone Bust. He apparently views his criminal liabilities as something to be shared with his innocent customers.

In Complaint (Doc. #1 in 2:12-CV-694) at Exh. H, his states in a 1-7-12 letter to Karalis:

> "(I) have run into some issues here…with the Las Vegas metropolitan Police Department and…with the local BATF&E office. The situation was (and is) a witch hunt…. As a result… BATF&E has seized a number of NFA firearms, including *those* which you and I had *dealings* in regards to." (Italics added).

This letter reflects (1) no remorse and (2) that Carn and Karalis dealt in the sales of multiple guns (the letter says "including those" and "dealings" in the plural).

**THE HOLDING IN *FUENTES* ENTITLES KARALIS TO A HEARING UNDER THE DUE PROCESS GUARANTEE OF THE FOURTEENTH (AND FIFTH) AMENDMENTS.**

*Fuentes v Shevin* (1972) 407 U.S. 67, 92 S.Ct. 1983 is a published opinion, and has the Force of an appellate opinion. It remains Good Law.

Whether served with a Forfeiture Notice or any other administrative notice, Karalis has standing--- or *vicarious* standing if he is not the criminal defendant-- to be heard. The Constitutionally penumbral ruling in *Fuentes* requires that persons faced with a prejudgment replevin action be notified in a timely manner and given an opportunity to be heard prior to the seizure. The case rests on Due Process under the Fourteenth Amendment. Karalis's motion does not seek replevin, altho getting guns back from Carn could be defined as replevin (from Carn). However, *Fuentes* should be read as applying to all forms of Equity.

The Court *held* that parties have a right to prior notice and a hearing to prevent arbitrary deprivation of property. Any significant property interest is protected by the due process clause, and any temporary, non-final deprivation of property is also a deprivation. The Court also rejected a due process distinction between property necessary for absolute necessities of life versus other property.

Any Rules of Court, administrative procedures, customs, statutes, or regulations to the contrary are submerged to the Power of the Constitution, which is Supreme.

**KARALIS HAS MADE A PRIMA FACIE SHOWING OF ENTITLEMENT TO $ 99,180.00 PAYABLE TO KARALIS, PAYMENT TO BE MADE IN THE FORM OF MONIES, GUNS, OR SUBSTITUTED GOODS ("COVER") TO BE RELEASED FROM THE ATF SEIZURE CACHE.**

A claimant typically makes a *prima facie* case of lawful entitlement by asserting an ownership interest of the seized property. *U.S. v Rodriguez-Aguirre* (CA 10, 2001) 264 F. 3d 1195, 1205. The cashed checks totaling $ 99,180 and the defendant-issued Bills of Sale --which are exhibits in Plaintiff Karalis's complaint (Doc. #1 in 2:12-cv-694--) establish a *prima facie* case of entitlement in eight (8) guns, four (4) Beta .223 magazines, with some (*de minimis*) monetary "change" left over.

**In reviewing this case last year, Judge Gordon Judge Gordon made observations consistent with Plaintiff's position that he will probably prevail on the merits. These appear in a Reporter's Transcript (Doc. # 110 in #2:12-cv-694), at the following: page 5/L 13; 6/L 3-14; 13/ L 1; 14/L 5- 16 (even Mr. Van admits a Bailment could be involved); 23/ L 19 (Judge states he read (Plaintiff's "pleadings, you did a good job of presenting them and I've read them several times....". The Judge stated he could see no defense.**

**ANY DOUBTS SHOULD BE RESOLVED *PRO TEMPORE* BY MAINTAINING THE STATUS QUO, THEREBY ALLOWING ATF TO CONTINUE RETAINING THE ENTIRE SEIZED CACHE.**

Karalis is willing to wait until all criminal and civil proceeding are finalized, rather than to allow any guns to be prematurely released to Kelly Carn, his sons, or the well-oiled criminal enterprise known as Gun Vault. The Public also does not need a perjurious family trafficking in machine guns.

**EVERY SALE OF A NFA CLASS 3 WEAPON INVOLVES A BAILMENT-FOR-HIRE. PLAINTIFF IS CURRENTLY STUCK IN THIS BAILMENT STAGE.**

In simple terms, Karalis is simply a Buyer waiting to pick up hisfully paid-up purchase of eight (8) guns.

To date, defendants have dismissed Karalis's claims of bailment as some sort of oddity, almost never addressing that claim, which appears in the civil Complaint (Fourth Cause of Action). The issue of Bailment is critical, actually determinative, herein. A bailment is a necessary contractual step in the performance of a NFA Class 3 firearms sale. It follows that a Bailment is created only after the Buyer takes title (or otherwise Buyer would have no *res* to bail).

Karalis is the bailor, and defendant is the bailee. This is a bailment-for-hire because the contracting parties understood that the Seller would hold onto the guns as a part of the sales procedure. Again, a bailment is necessary in a Class 3 NFA purchase, since the customer can never take the gun home unless he/she waits several months while ATF completes the paperwork (ATF Form 1) and writes to the law enforcement agency where the Buyer resides or has its business—steps required as a condition precedent before the Seller can permit the customer to take physical possession of the gun.

Obtaining a Class 3 weapon requires first a sale (which is governed under UCC), then a waiting period during which the buyer submits NFA paperwork to the ATF in order to take custody of the gun. During that ATF application period, the selling dealer retains possession of the gun—which is a Bailment. It is a bailment for hire because the retention of the gun by the selling dealer is a necessary step for a private citizen. It is also "for hire" because the Seller makes money by being the Bailee—or otherwise Seller could not sell these guns. Exceptions apply to purchases by law enforcement.

For this reason, Karalis had no choice in any of the eight (8) transactions but to allow defendant to continue holding his guns in storage. The point is that Karalis took title under UCC the moment he purchased the guns. There is no legal waiver of rights or prejudice to Karalis by allowing defendant to store the guns until Karalis could submit the Class 3 paperwork to ATF.

Karalis is now stuck in this second (Bailment) step. He should be in a position now to direct Carn to forward the NFA guns to an AZ dealer so Karalis can register them from

AZ with ATF. As can be seen, Carn and his family have disrupted this otherwise-pro-forma process.

**THE COURT RETAINS CONTROL OVER ANY GUNS WHICH ARE RELEASED TO KARALIS.**

The same is not true if the guns are released to the Carn family. He, and the two (2) sons he has schooled in lying and stealing at the Gun Vault, will sell them, pocket the money, declare bankruptcy, and thumb their noses at all their customers, at this Court, and at the Judiciary. (Recall Charles Dicken's novel *Oliver Twist*, about the young rogue gang of thieves in London headed by ringleader Fagin). Carn has long done business on the premise that, if he just doesn't pay his debts, the creditors and their collection agencies will simply go away. (Karalis asks Judicial Notice of the *Harley Mann* case pending against Gun Vault, and other breach of contract actions (all but *Mann* are now closed, probably from creditors' exhaustion), as listed in the Clark County Circuit Court website (Scan this website by "Party" for the list).

The web is full of former Carn customers who reveal stories of delays, non-responsiveness, lying, and debt-defaults. The sales official of one name-brand firearms supplier blogged that his company will not ship anything to Gun Vault because their invoices were not paid.

In a 41(g) proceeding, Karalis can prove that Carn has a substantially unethical reputation involving mysterious handling of guns entrusted to gun vault. Such "reputation" evidence is permitted under *FREvid.* 608(a) to attack his *credibility*. If Carn testifies about his "good" character, Karalis stands ready—in a 41(g) forum—to elicit specific instances of untruthful conduct on cross-examination, permitted under FREvid. *Rule* 608(b). See also *McCormick* Sect. 44.

Karalis is already familiarizing himself with Bankruptcy rules in this Court—just in case Carn tries to escape his liabilities that way. (Again, Karalis is a bailor, not a creditor—but this will probably need argument in a future Bankruptcy court to keep Karalis's claims