George D. Karalis, M.D.
235 El Camino Del Mar
San Francisco, CA 94121-1114
(415) 668-6634
In Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

UNITED STATES OF AMERICA
Plaintiff,

Case No. 2:13-cr-346 KJD-GWF

REPLY (OF SEIZED-PROPERTY OWNER KARALIS) TO UNITED STATES RESPONSE ( Doc. # 54 ) TO MOTION (Doc. #46) UNDER FRCrimP 41(g)

vs.

KELLY D. CARN,
Defendants
_____/

**COMES NOW THE MOVANT AND INTERESTED PARTY,** George Demetrius Karalis, and files this Reply to the United States RESPONSE TO MOTION ("USRM") (Doc. # 54), responding to Karalis's Motion for return of seized property (Doc. #46).

Karalis seeks only those guns not required in evidence in Carn's criminal proceedings. "(D)efendant's Rule 41[g] motion should presumptively be granted if the government no longer needs the property for evidence." (Internal citations omitted). *U.S. v Kriesel* (CA 9, 2013) 720 F.3d 1137 at 1144.

# PACER SYSTEM PROBLEM

Karalis cannot electronically file with this Court— a real disadvantage.

Karalis filed his 41(g) MOTION (Doc. #46). The Defendant filed an OPPOSITION (Doc. #50). The United States (per Andrew Duncan, Esq.) filed its RESPONSE (Doc. #54). This instant Karalis REPLY responds specifically to Mr. Duncan's #54 RESPONSE.

Karalis also filed a (1-26-15) REPLY TO DEFENDANT'S OPPOSITION, specifically addressing Doc. #50. This 1-26-15 filing is not on Pacer yet, Karalis will refer to it as the "RDO".

Of course, Karalis will refer to the 1-26-15 filing by PACER Document # XXX when a number is assigned.

## *EVERY* SALE OF A NFA CLASS 3 WEAPON INVOLVES A BAILMENT-FOR-HIRE. PLAINTIFF IS CURRENTLY STUCK IN THIS BAILMENT STAGE.

The USRM notes that Karalis's civil Complaint appends Bills of Sale that conform to the three (3) or maybe four (4) guns the USRM lists on page 2. The USRM then goes on to nullify any claims Karalis may have, arguing that Karalis is not the "registered owner.". The fact is that, under the sales provisions of UCC, Karalis has *title to each gun under the NV-adopted UCC provisions.* He is the *legal* owner under Nevada law, even though he is not (yet) the ATF *registered* owner.

In every private party NFA Class 3 weapons purchase, the *title* of the weapon is determined by state law (*e.g.* Karalis's UCC purchase). ATF usually accepts state-defined title as registrable for the ATF registration (*Form* 4, referred to on pg. 3/ Line 21 of Doc. # 54).

In any event, Karalis is certainly the Equitable owner, and will ask as a remedy that the Court order Carn to do the specific performance act of quitclaiming any interests in those guns to Karalis, so Karalis can register them with ATF. This would satisfy an ATF Form 4 requisite. "EQUITY TREATS AS DONE THAT WHICH OUGHT TO BE DONE".

The USRM confuses *title* to a gun with *registration* of a gun. The USRM (pg. 3) cites *Felici*, but that case is inapposite. In his civil Complaint (Doc. #1 in 2:12-cv-694), Karalis attached as Exhibits a number of Bills of Sale and cancelled checks, reflecting his full $ 99,180 prepayment for eight (8) guns and four (4) Beta Magazines.

To date, defendants (and now the United States) have dismissed Karalis's claims of bailment as **some sort of oddity,** almost never addressing that claim, which appears in the civil Complaint (Fourth Cause of Action). The issue of Bailment is actually *determinative* herein. A bailment is a *necessary* contractual step in the performance of a NFA Class 3 firearms sale. It follows that a Bailment is created only after the Buyer takes title (or otherwise Buyer would have no *res* to bail).

In his 41(g) Motion, Karalis has cited UCC authority that a Buyer takes *title* at the *moment* of purchase and payment. Actual NFA Form 4 registration goes only to the issue of the right to possess the gun (i.e., to walk out the door of the gunshop with gun in hand). ATF does not confer *title* on anyone.

In citing *Felici*, the USRM misapprehends that Karalis is not the owner of anything because any guns at issue are registered to The Gun Vault, Inc., and Karalis has never filed a Form 4.

There is no time limit for a Buyer to file the Form 4. In fact, the instant Carn-generated actions have blocked Karalis was filing Form 4s. And even in ideal circumstances, a Form 4 is only approved after the ATF processes it and does background checks, which often takes many months. During that ATF processing period, any Buyer holds title.

An analogy occurs when the local police seize a spouse's guns after the other spouse files a restraining order against the first spouse for domestic violence. The statutes in most states allow the guns to be returned when the RO is dissolved.

In this example, the police hold the guns in a Bailment, but the title *remains* in the spouse restrained by the RO. If the spouse is convicted for a crime excluding future possession of firearms, the states usually allow the convict to have the police transfer the guns to a federally licensed gun dealer so they can be transferred or sold to an eligible buyer. The convict is permitted to do so because he/she is still the *title* holder, even though the conviction strips him/her of the right of *possession*.

Another example: Karalis buys a book online from Amazon.com. He pays for it by credit card (in full) at the moment he is completing the online shopping form. From that moment on, Amazon is no longer the title holder of that book. Karalis now holds title. There will be a delay while Amazon processes, packs, and ships the book---delays occurring over at Amazon. That post-sale period is a Bailment.

Karalis holds good UCC *title*, and it is entirely irrelevant whether his purchase was registered with ATF. His next step is to obtain title of record from Carn (voluntarily or otherwise), and then fill out the ATF Form 4 paperwork.

In simple terms, Karalis is simply a Buyer waiting to pick up his fully paid-up purchase of eight (8) guns.

Karalis is the bailor, and defendant is the bailee. This is a bailment-for-hire because the contracting parties understood that the Seller would hold onto the guns as a part of the sales procedure. Again, a bailment is necessary in a Class 3 NFA purchase, since the customer can never take the gun home unless he/she waits several months while ATF completes the paperwork (ATF Form 1) and writes to the law enforcement agency where

4

the Buyer resides or has its business—steps required as a condition precedent before the Seller can permit the customer to take physical possession of the gun.

Obtaining a NFA Class 3 weapon requires first a sale (which is governed under UCC), then a waiting period during which the buyer submits NFA paperwork to the ATF in order to take custody of the gun. During that ATF application period, the selling dealer retains possession of the gun—which is a Bailment. It is a bailment for hire because the retention of the gun by the selling dealer is a necessary step for a private citizen. It is also "for hire" because the Seller makes money by being the Bailee—or otherwise Seller could not sell these guns. Exceptions apply to purchases by law enforcement.

For this reason, Karalis had no choice in any of the eight (8) transactions but to allow defendant to continue holding his guns in storage. The point is that Karalis took title under UCC the moment he purchased the guns. There is no legal waiver of rights or prejudice to Karalis by allowing defendant to store the guns until Karalis could submit the Class 3 paperwork to ATF. When buying the guns, Karalis, a California resident, was contemplating a retirement move to Arizona, where citizens can possess these NFA guns and where he owns an 80 acre ranch.

Karalis is now stuck in this second (Bailment) step. He should be in a position now to direct Carn to forward the NFA guns to an AZ dealer so Karalis can register them in AZ with ATF.

Carn and his family have disrupted this otherwise-pro-forma process.

**YET *ANOTHER* FRAUD WHILE HE IS *ON BAIL* ---ALMOST !!**

Defendant Carn has admitted already that Karalis is the owner of a seized .380 cal. MAC firearm, and Carn's own Motion for return of seized property (Doc. #30 & parag. e of

5

Carn Affidavit therein). His Affidavit explicitly states his intent to return possession of that gun to Karalis. This is a flat *admission* by Carn that Karalis is the titled owner of at least one gun in the seized ATF cache. It is also a declaration against party's (Carn's) interest--- and therefore all the more probative.

The facts will develop, and a fair reading of civil Complaint as it now stands reflects, that the eight (8) guns were bought *seriatim*. While the dates of their purchases varied, the t/o was essentially the same. Yet, in attempting to have *most* of the firearms seized by ATF released to him, Carn executed an Affidavit at Page 5 of Doc. #30 (Def's Motion for Return of Seized Property).

He declares that Karalis owns the .380, but *omits* mention of any other of his eight (8) purchases. Karalis's Complaint in #2:12-cv-694 alleges that Carn sold him eight (8) guns.

The factual context of all of the sales (the t/o) is essentially identical. Karalis would come into Carn's gun shop. Carn would show Karalis a gun. If Karalis wanted it, he would so state. Karalis would take physical possession (delivery) of the gun, then take a picture of it. Karalis would then, by verbal agreement, tell Carn to store it until Karalis could register the sale with ATF and then take physical custody of the gun. Karalis maintains the sale was complete at each event under the UCC, and that Karalis's subsequent return of the gun to Carn constituted a bailment. The only exception is a mini-UZI Group Industries 9mm gun, which was to be delivered as soon as Carn received it in his shop.

When Karalis read the USRM (page 2), he saw the U.S. Attorney list three (3) guns and "Additionally, there I at least one firearm listed on a bill of sale that matches a firearm in the government's possession."

Of those four (4) guns, only one (1) is the .380. Why did Kelly fail to mention the other two (2), or maybe three (3) ? After all, there was nothing unique about the .380 sale to distinguish it from the others.

6

ANSWER: Kelly states in that Affidavit he needs to pay off personal debts. He was intending to deceive the Court into releasing everything he could get his hands on from the ATF seizure. Had the U.S. Attorney not listed these additional firearms, Karalis would have missed the fraud. Carn would have fraudulently induced the Court to release guns which Karalis had title to (provable by the Bills of Sale in the civil Complaint) to his sons to convert to their own use. *(This is incredible—Carn is on a Bail status and yet makes this final try to steal guns from Karalis).*

Again, Karalis believes that Carn's earlier motion (Doc. #30) was a fraud upon the Court and upon Karalis. Carn sought to smokescreen the theft of seven (7) guns by focusing on the .380—the only gun he had not (yet) stolen. He probably believed that Karalis would not realize this plan. Carn would then liquidate all the guns seized—through his corrupt family business which still holds a Class 3 ATF license—and sell them to pocket the money. Probably he would then file bankruptcy. Plintiff Karalis would be left with two (2) destitute defendants and no recovery (beyond the .380, assuming Carn has not already sold that gun three times over).

That .380 gun was one of the least expensive, costing Plaintiff $3500 (See Complaint Doc. #1, Exh. D, in #2:12-cv-694, which exhibit is a Carn-generated second page to one of the Bills of Sale). This was Kelly's effort to "throw Karalis a Bone", transferring to Karalis a *de minimis* $ 3500 item out of the $ 99,180 he pocketed, and reflects a Defendant with no remorse.

*And all this while on Bail status.*

**THE (01-31-14) *GLADDING* DECISION SUPPORTS KARALIS'S RIGHT TO INSPECT ATF SEIZURES TO IDENTIFY HIS ITEMS.**

On 1-31-14, the Ninth Circuit published the (3-0) opinion in *U.S. v. Gladding* (CA 9 docket # 12-10544).

7

This was discussed at length in Karalis's REPLY TO DEFENDANT'S OPPOSITION "RDO") (served 1-26-15).

It is critical that Karalis be allowed to access the ATF vault with photos in hand.

Review the Karalis "RDO" (1-26-15) at page 6 regarding the "GERMAN MP-40". Carn sold Karalis a GERMAN MP-40 for $ 16,000 (Complaint, *supra*, at Exh. D), but the serial number ws not on that Exhibit D. The gun was *fully* prepaid, however.

Now, looking at the ATF seizure inventory appended to Carn's 41(g) motion (Doc. #30 herein), we see a make and model gun of the same description, but with a serial number.

Could this be one of Karalis's missing guns ? Quite possibly. Karalis should have 41(g) access to the ATF vault to compare his photos to the scratches, dents, tool marks, etc. (which make a gun as identifiable as a fingerprint) to see if the ATF seized gun is one he photographed when he purchased it. *FREvid.* 901(b)(4) permits tool marks and the like to serve as a basis for identification.

**"EQUITY ABHORS A FORFEITURE." THE "CALLOUS DISREGARD" REQUIREMENT IS PROBLEMATIC. TO THE EXTENT IT EXISTS, KARALIS HAS MET THE REQUIREMENT.**

This was discussed in the RDO. The fact that the United States assumed the guns belong to defendants and never issued a notice to Karalis to claim their return under a forfeiture proceeding proves that the is urging yet another act of "callous disregard". Recall also, Karalis's citation of *Fuentes v Shevin*.

**KARALIS HAS MADE A PRIMA FACIE SHOWING OF ENTITLEMENT TO $ 99,180.00 PAYABLE TO KARALIS, PAYMENT TO BE MADE IN THE FORM OF MONIES, GUNS, OR SUBSTITUTED GOODS ("COVER") TO BE RELEASED FROM THE ATF SEIZURE CACHE.**

A claimant typically makes a *prima facie* case of lawful entitlement by asserting an ownership interest of the seized property. *U.S. v Rodriguez-Aguirre* (CA 10, 2001) 264 F. 3d 1195, 1205. The cashed checks totaling $ 99,180 and the defendant-issued Bills of Sale --which are exhibits in Plaintiff Karalis's complaint (Doc. #1 in 2:12-cv-694--) establish a *prima facie* case of entitlement in eight (8) guns, four (4) Beta .223 magazines, with some (*de minimis*) monetary "change" left over.

**In reviewing this case last year, Judge Gordon Judge Gordon made observations consistent with Plaintiff's position that he will probably prevail on the merits. These appear in a Reporter's Transcript (Doc. # 110 in #2:12-cv-694), at the following: page 5/L 13; 6/L 3-14; 13/ L 1; 14/L 5- 16 (even Mr. Van admits a Bailment could be involved); 23/ L 19 (Judge states he read (Plaintiff's "pleadings, you did a good job of presenting them and I've read them several times....". The Judge stated he could see no defense.**

**THE 41(g) TRIBUNAL IS AVAILABLE TO KARALIS.**

The USRM at page 4 argues that this "court should defer to the civil case." Karalis extensively argued this point in his REPLY (OF SEIZED OWNER KARALIS TO DEFENDANT'S OPPOSITION ('RDO" of 1-26-15).

Recall that in *Fuentes v Shevin*, the claimant was afforded a forfeiture hearing, even though she, in every likelihood, could have filed a civil complaint in a U.S. District

9

Court. The U.S. Supreme Court held that she did not have to, and remanded the case for a forfeiture hearing. Karalis stands in the claimant's shoes.

**CARN HAS NO STANDING TO CLAIM ANY GUNS OTHER THAN THE FEW HE PERSONALLY OWNS.**

In Doc. #30, page 5, the Carn Affidavit at Parag. 4(a) asks return of "All items listed on Exhibit G, as belonging to The Gun Vault, Inc. or myself, should be turned over to my sons...."

But the 41(g) Motion (Doc. #30 was filed *only* for Kelly Carn as an *individual*: 'Comes now, Defendant Kelly Carn....' The Gun Vault, Inc., did not make this motion.

Therefore, since the Gun Vault, Inc. never moved for 41(g) relief in Doc. #30, it is not a party (at all), and therefore no guns must be released to that corporation.

**ANY DOUBTS SHOULD BE RESOLVED *PRO TEMPORE* BY MAINTAINING THE STATUS QUO, THEREBY ALLOWING ATF TO CONTINUE RETAINING THE ENTIRE SEIZED CACHE.**

The commingling *supra* betrays how defendant Carn treats the Gun Vault, Inc. –already closed corporation-- as an *alter ego*, and not as a stand-apart corporation, in his crimes. The entire family is corrupt, and Carn Sr.'s actions are inextricably intertwines with those of his sons Joseph and Kelly, Jr.

As the Carn Affidavit shows, (Id., at Page 6, and counsel Perry's argument at Page 2 [parag. 8]). Perry states, "Mr. Carn has made arrangements to have the guns belonging to The Gun Vault, Inc. and to him personally turned over jointly to their designees...." *Such 41(g) relief would enable further acts of larceny.*

Karalis is willing to wait until all criminal and civil proceeding are finalized, rather than to allow any guns to be prematurely released to Kelly Carn, his sons, or the well-oiled criminal enterprise known as Gun Vault. The Public also does not need a perjurious family trafficking in machine guns.

The United States Attorney is absolutely justified in arguing previously (Doc. #33) that a release of guns to Carn or his privies is a risk.

**WHEREFORE, MOVANT PRAYS HIS 41(g) MOTION BE GRANTED.**

Respectfully submitted,

_____  Dated: 1-28-15

GEORGE DEMETRIUS KARALIS

///

///

11

# CERTIFICATE OF SERVICE BY MAIL

I, Florence NG reside at 233 el camino del mar, San Francisco, CA 94121-1114.
I am over the age of 21 years, and not a party to the within action. On __1-29__,
201_5_, I served by mail true copies of Plaintiff's

REPLY (OF SEIZED PROPERTY OWNER KARALIS)
TO UNITED STATES RESPONSE (DOC. #54)
TO (KARALIS) MOTION (DOC. #46) UNDER
FR Crim. P. 41(g).

in the matter of *U.S.A. vs. Kelly D. Carn* (U.S. District Court Nevada # 2:13-cr--346-KJD-GWF), by depositing same in a mailing receptacle maintained for receiving mailables and regularly maintained by the United States Postal Service. I deposited the above documents in a sealed envelope, first-class postage thereon fully prepaid, addressed as follows:

Joshua L. Benson, Esq.
10001 West Park Run Drive
Las Vegas, NV 89145

Shumway Van & Hansen
8985 South Eastern Avenue Suite # 100
Las Vegas, NV 89123

Christopher Oram, Esq.
520 South 4th Street / Second Floor
Las Vegas, NV 89101

Craig Perry, Esq.
8010 West Sahara Ave. #260
Las Vegas, NV 89117

Daniel G. Bogen, United States Attorney
Andrew Duncan, Esq.
333 South Las Vegas Blvd. #5000
Las Vegas, NV 89101

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in San Francisco City and County, State of California, on __1-29__, 201_5_.

_____
Declarant